CLERK'S OFFICE
A TRUE COPY
Mar 19, 2025
s/ K. Reed
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Records re: the Cellular Telephone Assigned Call<br>Number (414) 712-0545 ("the SUBJECT PHONE") as<br>further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.   25   MJ   41 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A,

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371; 1958; & 924c | Murder for hire; Discharge of a firearm during a crime of violence; and felon in possession of a firearm. |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Dettmering, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 03/19/2025

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, **Jacob A Dettmering**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(414) 712-0545**, ("the SUBJECT PHONE"), that is stored at premises controlled by **AT&T**, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach Florida. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **AT&T** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020. Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF). Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained, and executed search and arrest warrants related to the distribution of illegal narcotics, violent incident crimes, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

1

3.     I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and therefore does not set forth all of my knowledge about this matter.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1958 & 2(a) (murder for hire and conspiracy to commit murder for hire) and §§ 924(c)(1)(A)(iii) & 2(a) (discharge a firearm during a crime of violence) have been committed by **LAWRENCE TURNER**.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

7.     Your affiant sought and obtained a previous warrant for data from the SUBJECT PHONE from the Honorable Magistrate Judge William Duffin on October 17, 2024 (see 24-MJ-214).  That warrant sought and obtained information relating to the SUBJECT PHONE for the time frame of October 1, 2020 to April 7, 2021.  For the reasons explained below, this warrant now seeks to expand that end date until July 1, 2024.

2

## PROBABLE CAUSE

8. Since June of 2020, case agents with the Federal Bureau of Investigation (FBI) in coordination with the Milwaukee Police Department (MPD) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), have been investigating identified members of the violent street gang, Wild 100s, aka Shark Gang, including Lawrence TURNER, for federal firearms and fraud offenses.

9. Based upon review of MPD reports, information provided by confidential sources, and review of publicly available social media posts, beginning in approximately July of 2020, members of the Wild 100s, aka Shark Gang, became involved in an ongoing feud with members of the Ghetto Boys Clique (GBC), aka Swindle Gang. Since that time, multiple homicides, shootings, and instances of illegal possession and transfer of firearms, including the possession of fully automatic firearms, that is machineguns, have occurred and are suspected to be associated with the ongoing gang feud.

10. Among many other shootings, Wild 100s members eventually focused their attention to Keyon STEWART (DOB: 08/25/1998), a member of GBC. STEWART made comments over social media referencing the homicide of Wild 100s gang member Raymond COLON and shooting of Teshae HANNA on March 15, 2021. Since STEWART's comments, there have been several attempted shootings of him by several Wild 100s gang members and associates. As will be described below, a .45 caliber firearm was used in at least 3 shootings that appear to target STEWART, as well as in the homicide of Nassor Buford (Stewart's close associate) that occurred on April 5, 2021.

11. On November 9, 2020, at approximately 12:07 am, Milwaukee Police Officers were dispatched to a shot spotter activation in the area of 2477 N 21st Street, Milwaukee, WI. This in

the same block as the intersection of 21st and Wright, a location associated with Stewart. Upon

arrival of the first arriving squad, the officers located 14 spent shell casings in the roadway in front

of 2500 N 21st Street, Milwaukee, WI. 11 of the recovered casings were .45 caliber. Officers did

not notice any stuck vehicles, houses, or persons. Officers recovered the shell casings and entered

them into Milwaukee Police Inventory. Once the shell casings were entered into inventory, they

were examined by ATF certified Forensic Technology Certified IBIS[1] Technician. This technician

determined that the recovered .45 caliber casing was linked to NIBIN Master Index Case Number:

5714.

  12. On December 12, 2020, at approximately 11:12 am, Milwaukee Police Officers

were dispatched to a shot spotter activation of three (3) rounds in the area of 2501 N 21st Street,

Milwaukee, WI. This in the same block as the intersection of 21st and Wright, a location associated

with Stewart. Upon arrival of the first arriving squad, the officers located one (1) spent .45 caliber

shell casing in the middle of the intersection of 21st Street and Wright Street. Once the shell casing

was entered into inventory, they were examined by ATF certified Forensic Technology Certified

IBIS Technician. This technician determined that the recovered .45 caliber casing was linked to

NIBIN Master Index Case Number: 5714.

  13. On January 20, 2021, at approximately 2:56 pm, Milwaukee Police Officers were

dispatched to the area of 52nd Street and Burleigh Street for a shot spotter activation of 15-rounds.

Recovered from the scene were nine (9) .45 caliber spent shell casings and five (5) 9mm spent

shell casings. Once the .45 caliber shell casings were entered into inventory, they were examined

---

[1] IBIS stands for Integrated Ballistics Identification System, which is part of the National Integrated Ballistics Information Network (NIBIN). NIBIN testing is a way to compare shell casings against other firearm crimes where shell casings were recovered.

4

by ATF certified Forensic Technology Certified IBIS Technician. This technician determined that the recovered .45 caliber casing was linked to NIBIN Master Index Case Number: 5714.

14.    Investigating officers determined that the victim was parked in the alley facing south behind the address of 3128 North 52nd Street and obtained 4 bullet strikes to the vehicle. The vehicle was a Red, 2019, Buick, Encore, 4 door, Rhode Island Plate# FZ-436, VIN# KL4CJGSM3KB872788, listed to Hertz Rental.

15.    The victim of the shooting was determined to be Brandon COTTON. COTTON stated he used the car from his friend Erica LATRICE, who is Keyon STEWART's sister, who both live at the address of 3128 North 52nd Street. COTTON stated he took the vehicle to get gas and then vacuemed the vehicle out, because LATRICE does not like the vehicle dirty inside. COTTON stated he arrived and parked in the alley rear of 3128 North 52nd Street. COTTON stated he was looking down at his phone and heard about 4-5 shots. COTTON stated he ducked down and when he looked up, he observed white, 4 door, Nissan, fleeing west in the alley.

16.    Investigators spoke to STEWART, who stated he was in the residence of 3128 North 52nd Street and heard couple of shots and came outside and observed Brandon M. COTTON, (B/M, 04-07-96), running up the steps. STEWART stated COTTON informed him that he was shot at and it was a white, 4 door, Nissan that shot at him and fled west in the alley.

17.    Investigators obtained video footage from a residence in the area of the shooting which shows the victim come in the alley from the north heading south and parks against the garage. The victim starts the vehicle back up as you can see the smoke in the air towards the victim's vehicle. As he is being fired upon and the victim reveres and hits a light pole. The white, Nissan flees west in the alley and then heads north on North 52nd Street. The Nissan has heavy dark tinted windows. The victim exited the vehicle holding a large black bag and runs into the

residence of the address of 3128 North 52nd Street. The license plate on the vehicle is an IOWA plate# JHF-521 as it is fleeing the area.

18.     Investigators had the victim vehicle towed to a secured lot, maintained by the Milwaukee Police Department. Investigators dust the vehicle for latent fingerprints and identify two fingerprints. The first was recovered from the interior driver's door frame was identified as the left thumb of Cameron A. COTTON, B/M, 07/21/98. The second was recovered from the interior rear driver's side door opera window was identified as the left index finger of Nassor BUFORD, B/M, 07/19/2000.

19.     On September 8, 2022, an informational teletype was sent to the Milwaukee Police Department from the Department of Transportation regarding a 2017 Nissan, VIN 1N4AL3APHN354186. The VIN matches the Nissan with attached Iowa plate number JHF521, involved in the referenced Shooting/Shots fired. The DOT Bureau of Vehicle Services received an application for a Security Bond regarding the Nissan, and they were inquiring if this vehicle was recovered by MPD and not reported. The person who applied for this vehicle title is listed as Gerrell BUFFORD (No relation to the homicide victim, Buford) at 2502 W. Vine Street Milwaukee, WI 53205.

20.     BUFFORD was interviewed by a Milwaukee Police Officer regarding the vehicle. Investigators know through the course of a federal investigation into Lawrence TURNER and other Wild 100s gang members, that BUFFORD is the brother of TURNER and was identified as participating in a fraud scheme with TURNER, BOWMAN and other Wild 100s gang members. In their interview, BUFFORD claimed he bought the vehicle from an unknown person on Facebook marketplace but thought it would be fine because his brother (a different brother, not TURNER) knew the guy who was selling the vehicle.

6

21.     On April 5, 2021, at approximately 9:30 pm, Milwaukee Police Officers were dispatched to a shot spotter activation and 911 call for a shooting at 4908 W Center Street, Milwaukee, WI. Upon arrival of the first arriving squad, Officers located Nassor BUFORD, B/M 07/19/2000, laying on the step of the residence with several obvious bullet wounds. Paramedics arrived and pronounced Buford deceased at approximately 9:42pm. Investigators recovered eleven (11) .45 caliber spent shell casings and two (2) 9mm spent shell casings from the scene. Once the shell casings were entered into inventory, they were examined by ATF certified Forensic Technology Certified IBIS Technician. This technician determined that the recovered .45 caliber casing was linked to NIBIN Master Index Case Number: 5714.

22.     Throughout the course of the investigation, Homicide Investigators determined that Buford was supposed to be meeting with someone outside his residence to purchase some marijuana. The phone number identified that was communicating with BUFORD at the time of the Homicide was determined to be a text now number. Investigators served legal process on text now and ended up determining that the person who utilized the TextNow number was Ronnie JACKSON, M/B, 12/16/1999.

23.     Investigators utilized pole camera video and other surveillance footage to identify the vehicle that was used for the Homicide, which was later determined to be a Zip Car, which has an internal GPS tracking system. Investigators were able to track the vehicles travel throughout the evening of the Homicide and marry that information up with the cell phone location for JACKSON during the same time. Investigators determined that the vehicle location and JACKSON's phone location were co-located at numerous locations throughout the course of travel.

7

24.     JACKSON was arrested by the U.S. Marshals and Milwaukee Police in Houston, Texas and was charged with first-degree intentional homicide in state court. During this time, Investigators with the FBI Gang Task Force were investigating 30-members of the Wild 100s criminal street gang for fraud, firearm crimes and murder for hire, including the homicide of BUFORD by JACKSON and BOWMAN. In April 2023, JACKSON, along with 29 others, were indicted for various violations of federal law in the Eastern District of Wisconsin (see 23-CR-77).

25.     In October of 2024, JACKSON participated in a proffer protected interview with case agents. During this interview, JACKSON admitted to the homicide of BUFORD and gave specific details of the homicide. Additionally, JACKSON identified TURNER as being a front seat passenger and second shooter for the homicide. JACKSON stated they were each promised and paid $10,000 from Ronnell BOWMAN to kill BUFORD. JACKSON also confirmed that BUFORD was targeted because he was closely associated with STEWART, with whom the Wild 100s were actively feuding as described above.

26.     JACKSON stated TURNER utilized a .45 caliber Glock pistol with a machine gun conversion device (MCD) and a 9mm Glock pistol with an MCD to kill BUFORD. As described above, NIBIN results from the .45 caliber spent shell casings from the Homicide matched Master Case Index 5714, which includes the shell casings recovered from the November 9, 2020, and December 12, 2020, shot spotter activations at 2500 N 21st Street, Milwaukee, WI, and the January 20, 2021, shooting which struck the vehicle in the alley behind 3158 N 52nd Street, Milwaukee, WI.

27.     Investigators know that during the relevant time, Keyon STEWART was known to frequent and reside in and around the area of 21st Street and Wright, which was the location of the first two referenced shootings. Investigators also believe that STEWART was the intended target

8

of the shooting in the alley on North 52nd Street. Investigators know Wild 100s members were actively trying to kill STEWART during this time, and likely thought STEWART was the one driving his sister's vehicle at the time of the shooting. Additionally, investigators know that the victim of the homicide, BUFORD, was a friend and close associate of STEWART at the time of his death.

28.     During the related fraud investigation, your affiant reviewed records from TURNER's Cash-App account. Those records revealed that on April 6, 2021 (the morning after the above-mentioned homicide) TURNER updated the account phone number on his Cash-App from 414-712-0545 (SUBJECT PHONE) to 414-510-9095.

29.     Your affiant has reviewed a variety of Instagram records recovered in this investigation and is aware that Turner's Instagram screenname was "__rtm__". In one Instagram return, your affiant observed a conversation where "__rtm___" provided number 414-712-0545 as his own phone number on March 12, 2021. Your affiant reviewed another Instagram message, where another Wild 100s member instructed an individual looking to purchase drugs to "Call my n**** Lawrence phone hold on" and then provided the phone number 414-712-0545.

30.     Your affiant obtained a historical cell-site data search warrant for 414-712-0545 from the Honorable Magistrate Judge William Duffin on October 17, 2024 (see 24-MJ-214). The data obtained from that warrant indicated TURNER was in Milwaukee near the scene of the Homicide on April 5, 2021.

31.     Your affiant participated in proffer protected interview which occurred on November 8, 2024, with JACKSON. During that interview, JACKSON told investigators that TURNER was paid by BOWMAN for the April 5, 2021, Homicide with a prepaid California

9

unemployment debit card.  TURNER reportedly got the card once he got back from Houston, Texas where he was with BOWMAN following the Homicide.

32.     During the above-mentioned fraud investigation, law enforcement has gathered a large volume of evidence relating to fraudulent California unemployment prepaid debit card use. In some instances, this includes location information such as the address the debit cards were delivered to and or the locations the card was used at.

33.     Your affiant believes that by obtaining historical cell-site data for the SUBJECT PHONE, case agents may be able to further corroborate JACKSON's statement of TURNER getting the pre-paid debit card as payment by cross referencing the SUBJECT PHONE's tower locations against data about the debit cards delivery addresses and use for the time frame following the homicide and through July 1, 2024.  Based on the entirety of the investigation your affiant believes that the sought records from this time frame are likely to contain evidence useful in tying the movements of TURNER to payment for the homicide via prepaid debit card use.

34.     In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site

10

data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

35.     Based on my training and experience, I know that **AT&T** can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.  Your affiant previously submitted a preservation request with AT&T and also knows that AT&T retains the information identified in Attachment B for a period of five-years which covers the time period requested.

36.     Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## **AUTHORIZATION REQUEST**

37.      Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

38.      I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on **AT&T**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **(414) 712-0545** ("the Account"), that are stored at premises controlled by **AT&T** ("the Provider"), headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach Florida.

**ATTACHMENT B**
**Particular Things to be Seized**

## I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **April 5, 2021 to July 1, 2021**:

    a.  The following subscriber and extended subscriber information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

14

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

        ii.  information regarding the cell towers and sectors through which the communications were sent and received; and

        iii.  per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

c. All records pertaining to communications between **AT&T** and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence, of violations of 18 U.S.C. §§ 1958 & 2(a) (murder for hire and conspiracy to commit murder for hire) and §§ 924(c)(1)(A)(iii) & 2(a) (discharge a firearm during a crime of violence) involving **LAWRENCE TURNER** during the period **April 5, 2021, to July 1, 2021**.

15

❏ Original

CLERK'S OFFICE
A TRUE COPY
Mar 19, 2025
s/ K. Reed
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>Records re: the Cellular Telephone Assigned Call )<br>Number (414) 712-0545 ("the SUBJECT PHONE") as )<br>further described in Attachment A )<br> ) | Case No.  25  MJ  41 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    04/02/2025    *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable William E. Duffin    .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    03/19/2025 at 10:00 a.m.    *William E. Duffin*
                                                                                       *Judge's signature*

City and state:    Milwaukee, WI    Honorable William E. Duffin, U.S. Magistrate Judge
                                                                  *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

---

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**
**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone

assigned call number **(414) 712-0545** ("the Account"), that are stored at premises controlled by

**AT&T** ("the Provider"), headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach

Florida.

13

**ATTACHMENT B**
**Particular Things to be Seized**

## I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **April 5, 2021 to July 1, 2021**:

     a.  The following subscriber and extended subscriber information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

       viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

      ii.   information regarding the cell towers and sectors through which the communications were sent and received; and

      iii.   per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

c. All records pertaining to communications between **AT&T** and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, of violations of 18 U.S.C. §§ 1958 & 2(a) (murder for hire and conspiracy to commit murder for hire) and §§ 924(c)(1)(A)(iii) & 2(a) (discharge a firearm during a crime of violence) involving **LAWRENCE TURNER** during the period **April 5, 2021, to July 1, 2021**.

15

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("Provider") and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Provider. The attached records consist of _____ (*generally describe records in terms of pages, CDs or megabytes of data*). I further state that:

        a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Provider, and they were made by Provider as a regular practice; and

        b.     such records were generated by Provider's electronic process or system that produces an accurate result, to wit:

                1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Provider in a manner to ensure that they are true duplicates of the original records; and

                2.     the process or system is regularly verified by Provider, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____  
Date

_____  
Signature